PEOPLE, PLAINTIFF AND APPELLEE, *v.* DELGADO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for a Crime against Public Justice.

No. 1879.—Decided April 27, 1922.

CRIME AGAINST PUBLIC JUSTICE—ESTOPPEL.—A refusal to dismiss, or the overruling of a demurrer to the evidence, or the denial of a motion for nonsuit for want of sufficient evidence, even though erroneous, is harmless error, and, therefore, no ground for a reversal whenever evidence supplying the omission has been subsequently introduced by either party.

ID.—EVIDENCE.—A was carrying a bottle of rum towards a group of persons assembled in a street, among whom was B. A policeman, while awaiting further developments, watched A and followed him at a certain distance. When A reached the group and before the policeman had overtaken him, B took the bottle from him and smashed it upon the ground. B having been charged with and convicted for a violation of section 137 of the Penal Code, *held:* That under these circumstances it can not be concluded that the defendant resisted, delayed or obstructed a public officer in the discharge of his duties.

The facts are stated in the opinion.

*Mr. F. Cervoni* for the appellant.

*Mr. José E. Figueras, Fiscal* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Section 137 of the Penal Code provides that "Every per-

son who wilfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by fine not exceeding five thousand dollars and imprisonment in jail not exceeding one year."

Appellant was convicted of the offense so defined and sentenced to pay a fine of $20 and costs and to serve five days in jail. The information says that when the complainant in this case, a police officer, was attempting to seize from Cecilio Rivera a bottle of rum, an intoxicating beverage which was the object of clandestine traffic by said Cecilio Rivera, the accused, Juan Delgado, snatched the said bottle of rum from the hands of Cecilio Rivera and broke it by throwing it to the ground, thus obstructing the complaining police officer in the free discharge of the duties of his office.

Obviously, the complaint, in so far as it suggests a violation of the Volstead Act, is based upon the theory of a sale of liquor or perhaps an offer to sell. The testimony, on a trial *de novo* in the district court, in so far as it discloses the commission of any crime for which the suspected individual might have been arrested, indicates the illegal transportation of liquor.

On a certain evening in September of 1921 a corporal of Insular Police and two guardsmen were standing on Cristóbal Colón Street in Yabucoa near the Maunabo road exit when a man came out of an alley with a bottle in his hand. An apparent disposition to keep the vial out of view seems to have aroused the suspicion and attracted the attention so sought to be avoided. The corporal ordered policeman Rodríguez to follow the furtive carrier of contraband. Rodríguez, who proceeded to carry out these instructions, says that when the bottle carrier, Cecilio Rivera, reached a group of individuals including appellant Juan Delgado, Juan said to Cecilio, "Give me that bottle", and "took it and smashed it upon the ground;" that the corporal and the other guards-

man having arrived on the scene, witness picked up the broken fragments which still had a little liquid in the bottom, sampled the contents and found the beverage to be strong rum. The corporal also took a sample. Witness was about to arrest Cecilio for transporting rum. He was not arrested because he had committed no crime, inasmuch as the rum was not seized in his possession.

The other policeman, Justo Colón, said that he followed Rodríguez down the street and the corporal brought up the rear. That upon arriving at the Maunabo exit Rodríguez "tried to take a bottle of rum from Cecilio Rivera, but defendant took the bottle from Cecilio and broke it." Rodríguez himself testifies to nothing beyond an unannounced intention of taking the bottle and the general drift of all the testimony shows that he was simply shadowing a suspect. The testimony of Colón is open to this interpretation, in the total absence of any detail or specification as to what the witness actually saw and heard, and may be properly so construed. On cross-examination he says that the broken fragments were not introduced in evidence in the municipal court because it was not known that the bottle was needed on that occasion, but that they were able to prove that the bottle contained rum "because witness smelled the bottle." The corporal says that "when Cecilio approached defendant, the policeman being some distance away, Juan Delgado took the bottle and smashed it upon the ground."

This witness also says "that the bottle was introduced as evidence in the Municipal Court of Yabucoa;" that witness is "sure that the bottle was introduced as evidence in Yabucoa." Whereupon counsel for defendant asked for a rule to show cause why witness should not be punished for perjury, as contempt; and thereupon, in answer to further inquiry by the *fiscal*, witness explained that he did not testify in the municipal court; "that witness had left the bottle in

the police station to be introduced in evidence and therefore believed that it had been introduced.''

The defense consisted of the testimony of two witnesses and is as follows:

''Juan Rosa testifies that on the night of the occurrence he was with some friends in Yabucoa at the Maunabo exit when Cecilio Rivera and policeman Rodríguez approached them; that Rodríguez came up to them and said: 'Corporal, come here.' The corporal, who was some distance away with another policeman, came to where they were and policeman Rodríguez said to him: 'This man was carrying a bottle and this one took it from him and threw it away.' Then the policeman searched Cecilio, but did not find anything, and the corporal ordered the arrest of Juan Delgado. That no bottles were there.

''Juan Ortiz gives the same testimony as the foregoing witness, but says that at the moment of the arrival of Cecilio at the gathering of friends at the exit to Maunabo policeman Rodríguez came up and said to him: 'Give me the bottle of rum.' Cecilio answered that he did not have any bottle, whereupon the policeman searched Cecilio and found nothing. That the policeman then called the corporal who was some distance away and the corporal ordered the arrest of Juan Delgado. That no bottle of rum was there.''

The only error assigned that we need consider is that the court overruled a motion to dismiss made at the close of the testimony for The People.

The *fiscal* cites *People* v. *Ojeda*, 26 P. R. R. 392, where we held, to quote the syllabus, that ''when a defendant presents his evidence after his motion for a nonsuit has been overruled this action is a waiver of his motion, the rule being the same in criminal and civil actions.''

But this brief indication of the elementary principle of estoppel involved presupposes that the evidence so introduced by defendant furnishes whatever elements the case as made by plaintiff may have lacked and therefore that no substantial right of defendant has been prejudiced.

A full statement of the rule would be that a refusal to

dismiss, or the overruling of a demurrer to the evidence, or the denial of a motion for nonsuit for want of sufficient evidence, even though erroneous, is harmless error, and, therefore, not ground for a reversal whenever evidence supplying the omission, and thus curing the defect, has been subsequently introduced by either party. 4 Corpus Juris, p. 1020, sections 3005–07; 9 R. C. L. 215, sec. 39.

Nor is the case of *People* v. *Rivera,* 25 P. R. R. 700, cited by the *fiscal,* in point. There the question was whether section 137 applies only to cases involving resistance offered to public peace officers in making arrests, and to court officers in executing lawful judicial orders, or should be held to include a sanitary inspector in the performance of his official duty in procuring samples of milk exposed for public sale, for the purpose of chemical analysis in order to determine whether or not the same has been adulterated. A majority of this court took the view last mentioned, but we are not disposed to extend the rule to include every conceivable attempt to anticipate the possible seizure and destruction of contraband regardless of its value or usefulness as evidence.

Here the proof plainly shows, as common sense would suggest in the absence of any evidence, that no laboratory methods were required in order to ascertain the true character of the liquid contained in the bottle. The act of defendant in breaking what seems to have been a perfectly good bottle, whatever may have been his motive or individual concept of the probable legal effect of such action, actually tended to corroborate the tentative theory upon which the minions of the law were proceeding, and to strengthen the case against Cecilio, upon the same principle that the flight of a fugitive from justice is usually regarded as an incriminating circumstance. It was, indeed, of a piece with the surreptitious symptoms manifested by Cecilio himself which first attracted the attention of the corporal and were used to advantage by

the prosecution in the case at bar. Upon the same principle the corporal instinctively soliloquized, as he admits upon the stand: "Hah, what moved this man to do this? Simply that he did not wish to be caught with the bottle, for I think the rum was for them. That he' ordered his arrest."

An arrest for transportation of liquor might have been made at any time after Cecilio emerged from the alley, and no effort to arrest him was being made at the time the bottle was broken. The proof shows beyond all doubt that the police were merely keeping the putative Ganymede under surveillance and awaiting further developments. There was no interference, obstruction or hindrance interposed to anything that was being done. No doubt they were disappointed at the sudden turn in the course of events; but section 137 does not purpose to punish one whose conduct is merely unexpected, however discomfiting it may prove to the police. Conceding for the sake of argument that it was their official duty, not only to pursue the suspected offender against a federal statute, but to capture the container intact, the failure to accomplish this result was due to their own dilatory tactics quite as much as it was to anything done by defendant herein. If defendant was moved to righteous indignation by the reprehensible conduct of Cecilio, whether viewed as a pure and simple violation of the law or as involving apparently imminent and undesirable complications for defendant and his friends, the breaking of the bottle was clearly not a crime. If the action complained of was prompted either by a desire to shield Cecilio or to protect defendant and his companions from the probable result of their own guilty connection with the transaction, then defendant may have been guilty of some offense, but not that defined by section 137. In any event, the only tangible result was to entangle Cecilio more inextricably in the network of circumstances already woven about him and to fasten more securely the suspicion already resting upon defendant and his friends. From no point of view

are we able to conclude that the defendant wilfully resisted, delayed or obstructed any public officer in the discharge or attempt to discharge any duty of his office.

The judgment appealed from must be

*Reversed.*

Chief Justice Del Toro and Justice Aldrey concurred.

Mr. Justice Wolf concurred in the judgment.

Mr. Justice Franco Soto took no part in the decision of this case.

### CONCURRING OPINION OF MR. JUSTICE WOLF.

I concur in the foregoing judgment and I concur in the reasoning of the opinion except so far as it seeks to distinguish between the present case and the case of *People* v. *Rivera,* 25 P. R. R. 700. In that case I dissented and my reason for dissenting was that no resistance to an officer was involved where a defendant, fearing arrest and conviction, destroyed a bottle of milk. He might perhaps be destroying evidence. I especially agree that section 137 does not punish one whose conduct is merely unexpected, but I maintain that the same reasoning was applicable in the milk case and that the present case overrules *People* v. *Rivera, supra.*